Filed 8/25/21  P. v. Montes CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ERMILO GARCIA MONTES,<br><br>    Defendant and Appellant. | F078875<br><br>(Super. Ct. No. BF173257A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Nirav K. Desai, Deputy Attorneys, General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Ermilo Garcia Montes stands convicted of three counts of lewd or lascivious acts committed against two victims under the age of 14 years: Penal Code section 288, subdivision (a) (section 288(a) or § 288(a)), counts 1 and 2;[1] section 288, subdivision (b)(1) (section 288(b)(1) or § 288(b)(1)), count 3.[2] The jury also found true special allegations that these crimes were qualifying offenses under section 667.61, subdivision (c) (section 667.61(c) or § 667.61(c)), of the One Strike law with a multiple-victim circumstance alleged as to each count under section 667.61, subdivision (e) (section 667.61(e) or § 667.61(e)). Defendant was sentenced to three consecutive terms of 25 years to life under section 667.61, subdivision (j)(2) (section 667.61(j)(2), subdivision (j)(2), or § 667.61(j)(2)).

Defendant argues the court failed to properly instruct on section 288(a) as a lesser included offense of count 3. Defendant also argues the court erred by failing to instruct the jury after the close of evidence under CALCRIM No. 220 on the prosecutor's burden of proof beyond a reasonable doubt. We conclude the court properly instructed the jury in both respects.

Defendant also contends the information did not provide him constitutionally sufficient notice of the 25 year-to-life sentence applicable to each of his convictions under the One Strike law because the charging document did not expressly reference section 667.61(j)(2). We disagree. The information specifically alleged underlying sex crimes against children under the age of 14 years, which were qualifying offenses under

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] Section 288(a) provides as follows in relevant part: "[A] person who willfully and lewdly commits any lewd or lascivious act … with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony .…" Section 288(b)(1) is violated when a person commits an act described in section 288(a) by "use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person .…"

section 667.61(c) and involved the multiple-victim circumstance under section 667.61(e)(4).  The allegation of these facts gave defendant fair notice that, if proven, the prosecutor would seek to sentence him under section 667.61(j)(2), which is the only sentencing provision of the One Strike law that applies to qualifying offenses against victims under the age of 14 years in the presence of one qualifying circumstance under section 667.61(e).

Finally, defendant argues his inability-to-pay objection to the fines, penalties, and assessments imposed at sentencing was not properly considered, and the case should be remanded so that he may develop a record and present his inability-to-pay arguments under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and section 290.3.  We agree with defendant in this regard, and remand for that purpose.  In all other respects, the judgment is affirmed.

### FACTUAL SUMMARY[3]

Jane 1 and Jane 2, both minors under the age of 14 years at the time of the offenses, accused defendant, their mother's live-in boyfriend, of touching them inappropriately.  The girls' mother called the police on May 18, 2018, and Kern County Sheriff's Deputies responded around 11:00 p.m.  Once at the house, deputies recorded separate interviews with defendant and the girls.

Both girls told the interviewing deputy that defendant had touched them on several occasions.  Jane 1 indicated defendant had touched her "boobs" and her vaginal area, both on top of and underneath her clothing.  Jane 2 reported he had touched her "upper chest" through her clothing on several occasions, beginning the previous year and ending a few weeks before the deputy questioned her.

---

**3**     A detailed summary of the trial testimony and evidence is unnecessary to resolution of the issues, and, thus, only a brief factual background is provided.

3.

Defendant told the interviewing deputy he was aware of what the girls were complaining about, but he denied touching them sexually or inappropriately. Defendant described how the girls had touched his penis on occasions when they slept in the same bed with their mother and defendant. Defendant admitted Jane 2 had given him a note, which asked him to stop touching them, but he did not understand the note because he had never touched them, and he ripped up the note because it "wasn't important."

Jane 1 and Jane 2 were interviewed by a social worker on May 23, 2018, in recorded sessions, and the girls gave generally consistent statements about how defendant had touched them inappropriately. Thereafter, defendant was charged with three counts of lewd or lascivious acts committed against a child under the age of 14 years pursuant to section 288. Count 1 related to Jane 2, and alleged a nonforcible lewd or lascivious act under section 288(a); count 2 related to Jane 1, and alleged a nonforcible lewd or lascivious act under section 288(a); count 3 related to Jane 1, and alleged a forcible lewd or lascivious act under section 288(b)(1). Special allegations under the One Strike law accompanied each count, alleging defendant had committed qualifying offenses under section 667.61(c) with multiple victims within the meaning of section 667.61(e).

At defendant's trial in January 2019, the recorded interviews of Jane 1 and Jane 2 conducted with the deputies and with the social worker were played for the jury, as was defendant's recorded interview with a deputy. Jane 1 and Jane 2 also testified. Jane 1 testified defendant had touched her boobs, squeezed them and licked them, and put his fingers into her vagina. In another incident, he showed her his "private parts," which he made her touch underneath his clothing. She saw his penis, and he made her squeeze it and made her mouth touch it by pushing her head down. Jane 1 demonstrated what he had done by putting her left hand on the back of her head and pushing it forward.

Jane 2 identified defendant as her stepdad and that he had lived with them. She testified defendant had touched her inappropriately about five times when she was 10 years old. He used to call her to his room so he could touch her. During at least one of

4.

those times, he touched her breasts over her clothing. She eventually found out defendant was touching Jane 1, too. Before Jane 2 told her mom, she and Jane 1 wrote a letter to defendant telling him to stop doing those things and to start respecting them. When the girls gave the letter to defendant, he just smiled and laughed and did not pay attention. He touched Jane 2 again after they wrote the letter to him. The girls later separately told their mother what was happening.

The prosecution called the interviewing deputies to testify as well as the lead investigating deputy. The girls' mother also testified about how and when the girls told her about defendant touching them, and why and how long she delayed before contacting the police. Defendant did not testify or present any evidence at trial.

The jury convicted defendant on all three counts and found true the multiple-victim circumstance allegations under the One Strike law. The court sentenced defendant to three consecutive 25-year-to-life terms under section 667.61(j)(2), and imposed various fines and assessments. Defendant now appeals.

## DISCUSSION

### I.  No Error in Instructing on Lesser Included Offense of Count 3

As to count 3, forcible lewd or lascivious act with a child under the age of 14 years (§ 288(b)(1)), defendant argues the trial court failed to properly instruct on the requested lesser included offense under section 288(a), which violated his federal constitutional rights.

The People dispute the court had any sua sponte duty to instruct on section 288(a) as a lesser included offense of count 3 because there was no evidence force had not been used to accomplish the lewd or lascivious act. But, even if the court had a sua sponte duty to instruct on this lesser offense, the People argue the court properly instructed on the lesser offense and defendant forfeited any contention to the contrary by failing to object or to seek an amplifying instruction.

### A.     Background

Count 3 alleged a forcible lewd or lascivious act under section 288(b)(1) as to Jane 1.  Section 288(b)(1) is violated when a person commits an act described in section 288(a) by the "use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person …."  (§ 288(b)(1).)  Here, the prosecutor relied on a single use of force for count 3:  defendant pushed the victim's head to his penis so that she would put her mouth on it.

#### 1.     Instruction Conference

The court discussed jury instructions with counsel after the close of evidence.  The court observed that a nonforcible lewd or lascivious act offense under section 288(a) was a lesser included offense of count 3 (forcible lewd or lascivious acts), but the prosecutor argued there was no basis to instruct on the lesser included offense.  Defense counsel requested lesser included offense instructions for count 3:  nonforcible lewd or lascivious acts under section 288(a) and an attempted nonforcible lewd or lascivious act under section 288(a).  The prosecutor argued there were no facts to suggest or support either of the lesser included offenses for count 3.  The court indicated it would instruct on the lesser included offense of attempted lewd or lascivious act, and informed counsel the issue would be revisited later that afternoon.

At a conference later in the day, the court informed counsel pattern instruction CALCRIM No. 3517 would be given, which identified attempted forcible and attempted nonforcible lewd or lascivious acts and a nonforcible lewd and lascivious act as lesser included offenses of count 3.  Neither counsel stated any objection.

#### 2.     Instructions to the Jury

Prior to closing arguments, the court gave final instructions to the jury.  As part of those instructions, the court instructed the jury on the elements of counts 1 and 2 for lewd or lascivious act (nonforcible) under section 288(a).

"The defendant is charged in Counts 1 and 2 with committing a lewd or lascivious act on a child under the age of 14 years. Count 1 is alleged to one victim and Count 2 as to another victim. [¶] To prove that the defendant is guilty of this crime, the People must prove that:

"The defendant willingly touched any part of a child's body, either on the bare skin or through the clothing or the defendant willfully caused a child to touch her own body, the defendant's body, or the body of someone else, either on their bare skin or through the clothing.

"The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child; and the child was under the age of 14 years at the time of the act.

"Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or child is not required for lewd or lascivious conduct. [¶] It is not a defense that the child may have consented to the act."

The court also instructed on count 3:

"The defendant is charged in Count 3 with a lewd or lascivious act by force on a child under the age of 14. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] The defendant willfully touched any part of a child's body, either on the bare skin or through the clothing or the defendant willfully caused a child to touch her own body, the defendant's body, or the body of someone else, either on the bare skin or through the clothing. [¶] In committing the act, the defendant used force, and in this case, I believe the only allegation is force; is that correct?"

The prosecutor agreed, and the court continued:

"The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child and the child was under the age of 14 years at the time of the acts. [¶] Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage. [¶] Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or child is not required for lewd or lascivious conduct. [¶] The force used must be substantially different from or substantially greater than the force needed to accomplish the act itself."

7.

The court then informed counsel he was striking the rest of the instruction because it was not specifically alleged, and both counsel assented.

### 3. Closing Arguments

During rebuttal closing argument, the prosecutor addressed the lesser included offenses and the verdict forms. In addition to the other verdict forms, there were three forms for the three lesser included offenses under count 3. The prosecutor discussed the following:

> "Now, there's two lessers—actually, there's three lesser-included to Count 3. The first would be that he attempted to use force in making her touch his penis but it's ineffective. So that's what you would see on page 9 [of the verdict forms]. [¶] You'll see it specifically as attempted lewd or lascivious act. You'll see the word force on it. That is a lesser-included offense. Another lesser-included offense—you have to go in order, though. You would have to find him not guilty of the previous one so this other one is he actually did a lewd or lascivious act with a child under 14 but did not use force. [¶] So if you found that he didn't use force, then you can come to this one also. It's this right here, lesser included offense on page 10 [of the verdict form] is the exact same elements as Counts 1 and 2…."

Defendant's counsel did not address the lesser included offense instructions during his closing argument.

### 4. Final Instruction on CALCRIM No. 3517

When closing arguments concluded, the court instructed the jury on the lesser included offenses and how to complete the verdict form pursuant to the pattern instruction, CALCRIM No. 3517:

> "So I'll read a couple of jury instructions. This won't take long. If you're taking notes and you want to write down [CALCRIM NO. ]3517, feel free to do so. [CALCRIM NO. ]3517, that's the instruction on how to deal with the greater or the charges in lesser-included offenses. It can be somewhat complicated. So here it goes:
>
> "If all of you find the defendant is not guilty of a greater crime, you may find him guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. A

8.

defendant may not be convicted of both a greater and lesser crime for the same conduct.

"Now I will explain the crimes [a]ffected by this instruction, including lesser crimes of the lesser crimes. Attempted lewd or lascivious act by force is a lesser crime of lewd or lascivious act by force charged in Count 3. Attempted lewd or lascivious acts is a lesser crime of lewd or lascivious acts charged in Counts 1 and 2, which are separate victims.

"It is also a lesser crime of the lesser-included offense of lewd or lascivious act for Count 3. Lewd or lascivious act is a lesser crime of lewd or lascivious act with force charged in Count 3.

"As I read this, it sounds very confusing. It's not really but it will be here for you back in the jury room. It's up to you to decide the order in which you wish to consider each crime and the relevant evidence but I can accept guilty of a lesser crime only if you've found the defendant not guilty of the corresponding greater crime.

"For any count in which a greater and lesser crime is charged, you'll receive verdict forms of guilty and not guilty for the greater crime and also verdict forms of guilty and not guilty for the lesser crime.

"You've heard the verdict form being gone over by [the prosecutor]. We'll send it back to you. I think it's pretty self-explanatory. Follow these directions before you give me any completed and signed final verdict form. Return any unused verdict form to me unsigned.

"One, if all of you agree the People have proved that the defendant is guilty of a greater crime, complete and sign the verdict form for guilty for that crime. Do not complete or sign any verdict form—other verdict form for that count, meaning a lesser included. You would have to address whether there's multiple victims but no lesser.

"If all of you cannot agree whether the People have proved the defendant is guilty of the greater crime, inform me only that you cannot reach an agreement and do not complete or sign any verdict form for that count at all.

"If all of you agree that the People have not proved that the defendant is guilty of the greater crime and you also agree that the People have proved that he's guilty of the lesser crime, complete and sign the verdict form for not guilty of the greater and the verdict form for guilty of the lesser. [¶] … [¶]

9.

"If all of you agree the People have not proved that the defendant is guilty of the greater crime but all of you cannot agree on a verdict for the lesser crime, complete and sign the verdict form for not guilty of the greater and inform me only that you cannot reach an agreement as to the lesser crime."

## B.     Analysis

The parties do not dispute that section 288(a) is, in fact, a lesser included offense of section 288(b)(1). The parties also do not dispute that the court agreed to instruct the jury on section 288(a) as a lesser included offense of count 3 (§ 288(b)(1)). The parties' primary disagreement is whether the lesser included instruction on section 288(a) for count 3 the court provided to the jury was sufficient.[4]

In deciding whether instructional error occurred, we "assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." (*People v. Mills* (1991) 1 Cal.App.4th 898, 918; accord, *People v. Covarrubias* (2016) 1 Cal.5th 838, 915.) "'"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." [Citation.]'" (*People v. Smithey* (1999) 20 Cal.4th 936, 987.) Accordingly, "[i]n assessing a claim of instructional error or ambiguity, we consider the instructions as a whole to determine whether there is a reasonable likelihood the jury was misled." (*People v. Tate* (2010) 49 Cal.4th 635, 696; see *Estelle v. McGuire* (1991) 502 U.S. 62, 72; see also *People v. Lopez* (2011) 198 Cal.App.4th 698, 708 ["We look to the instructions as a whole and the entire record of the trial, including the arguments of counsel."].) "Instructions should be interpreted, if

---

**4**     Defendant argues the act of force on which the prosecution relied to prove a forcible lewd or lascivious act under count 3 was defendant's act of pushing or guiding Jane 1's head to his penis. Defendant contends that because there was no evidence Jane 1 resisted, pushing her head down could be viewed under the case law as a nonforcible act supporting the lesser nonforcible offense under section 288(a). The People dispute that the act of pushing Jane 1's head down could be viewed as nonforcible under relevant case law. There is no need to resolve this dispute, however, because even assuming the evidence could be interpreted as defendant asserts, the jury was properly instructed that section 288(a) was a lesser included offense of count 3.

possible, to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*People v. Lopez*, *supra*, at p. 708.) We also presume the jury followed the court's instructions. (*People v. Edwards* (2013) 57 Cal.4th 658, 746.)

Defendant argues the only place section 288(a) was identified as a lesser included offense of count 3 was in CALCRIM No. 3517, a pattern instruction on how the jury was to fill out verdict forms where lesser included offenses are at issue. While that instruction identified section 288(a) as a lesser included offense under count 3, it did not restate the elements of section 288(a). Defendant contends that was error because, by the time the jury considered the instruction under CALCRIM No. 3517, which related to filling out the verdict forms, that single sentence merely identifying section 288(a) as a lesser included offense of count 3 came too late and was too incomplete.

We are not persuaded by defendant's assertion of error. Presuming there was substantial evidence to support an instruction on section 288(a) as a lesser included offense of count 3 (*People v. Breverman* (1998) 19 Cal.4th 142, 162 [trial court must instruct on a lesser included offense when there is substantial evidence the defendant is guilty only of the lesser offense]), the court not only satisfied any sua sponte duty to instruct on all the elements of the lesser included offense, the instructions on the lesser included offense were not misleading or untimely. The court agreed to instruct on section 288(a) as a lesser included offense, the jury was fully instructed on each and every element under section 288(a), and the instruction under CALCRIM No. 3517 identified section 288(a) as a lesser included offense of count 3. Beyond that, the prosecutor reiterated in closing argument that a nonforcible lewd or lascivious act (§ 288(a)) was a lesser included offense of count 3, and that the lesser included offense had "the exact same elements as Counts 1 and 2."

Defendant argues that, logically, by the time the jury got to the instruction under CALCRIM No. 3517 to fill out the verdict forms, they had already decided the merits of each count. Yet, as the People point out, the court fully instructed the jury before they

11.

began deliberating. The jury was instructed on the elements of section 288(a), and they necessarily considered the elements of that offense when they determined defendant's criminal culpability for counts 1 and 2—both counts were section 288(a) offenses. The jury was orally instructed that section 288(a) was a lesser included offense of count 3 before they began deliberations, the prosecutor explained this during closing arguments, and they had written copies of the instructions with them during deliberations.[5] On review, we are required to examine the whole charge given to the jury, and we presume the jurors are fully capable of understanding and correlating all instructions that are given and that they followed those instructions. (*People v. Tate*, *supra*, 49 Cal.4th at p. 696; *People v. Mills*, *supra*, 1 Cal.App.4th at p. 918.) Based on the instructions as a whole, there is no reasonable likelihood the jury was misled in any manner about the elements of section 288(a) or that it was a lesser included offense of count 3. The trial court's instruction on section 288(a) as a lesser included offense of count 3 (§ 288(b)(1)) was not misleading, ambiguous, or erroneous. As there is no constitutional or state law error, we decline to consider prejudice.[6]

---

[5] Nothing in the pattern instruction under CALCRIM No. 3517 or the bench notes thereto indicate the elements of any lesser included offense identified should or must be *restated* for the jury in this instruction.

[6] As we have considered the merits of defendant's instructional error argument, we need not reach the People's contention the issue was forfeited for lack of objection below. Similarly, because we find no error in the instructional charge on section 288(a) as a lesser included offense of count 3, we do not reach defendant's alternative ineffective assistance of counsel argument regarding trial counsel's failure to object to the sufficiency of the lesser included offense instruction. (See *People v. Cain* (1995) 10 Cal.4th 1, 61, fn. 22 ["Because we find no error on the merits we need not decide whether, as the People argue, defense counsel's nonopposition to the challenge waived the claim or, if it did, whether nonopposition constituted ineffective assistance of counsel."].)

## II. Instruction on Reasonable Doubt

### A. Background

On Friday January 11, 2019, after the selected jury was impaneled, the court gave a set of initial instructions, which included the reasonable doubt instruction pursuant to CALCRIM No. 103.[7]

Evidence was presented on Friday, January 11, 2019, and on Monday January 14, 2019. During an instructional conference between counsel and the court, defense counsel objected to an instruction under CALCRIM No. 1191B as confusing to the jury about the burden of proof and how the jury was supposed to evaluate each count. The court indicated it was required to give the instruction if the People rely on a charged offense as evidence of a predisposition to commit a similar crime in the same case. The prosecutor indicated she was relying on the charged offenses in this manner, so the court determined it would give the instruction. The court noted that, "as to burden of proof, there's a line at the end [of CALCRIM No. 1191B] which states, 'The People must still prove each charge and allegation beyond a reasonable doubt.' I'll read the reasonable doubt instruction again and then there's another time that it's referenced at least once."

---

[7] Under CALCRIM No. 103, the jury was instructed as follows: "I will now explain the presumption of innocence and the People's burden of proof. The defendant has pleaded not guilty to the charges. The fact that any criminal charge has been filed against him is not evidence that those charge are true. You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial. A defendant in a criminal case is presumed to be innocent. [¶] This presumption requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically instruct you otherwise. Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt. [¶] In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial. Unless the evidence proves the defendant guilty beyond a reasonable doubt, he's entitled to an acquittal and you must find him not guilty."

In the afternoon of January 14, 2019, final jury instructions were given, closing arguments were presented, and the court then gave several additional jury instructions. The court inadvertently did not reinstruct the jury on reasonable doubt pursuant to CALCRIM No. 220.[8]  Several of the court's instructions did, however, reference the reasonable doubt standard in the context of explaining general principles.  An instruction given pursuant to CALCRIM No. 225 ("Circumstantial Evidence:  Intent or Mental State") stated, in pertinent part, "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt."  Additionally, while explaining the corpus delicti rule (CALCRIM No. 359), the trial court indicated, "You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt."

The trial court also instructed the jury on the substantive elements of each of the charged offenses, and those instructions informed the jury the prosecutor carried the burden to prove the elements of the offenses.  Additionally, the jury was instructed pursuant to CALCRIM No. 1191B, which provided in relevant part, "If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the other sex offenses charged in this case.  [¶]  If you find the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence.  It is not

---

[8]     The reasonable doubt instruction under CALCRIM No. 220 is identical to CALCRIM No. 103 with the exception that CALCRIM No. 220 does *not* include the following two introductory sentences:  "I will now explain the presumption of innocence and the People's burden of proof.  The defendant has pleaded not guilty to the charges."

14.

sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge and allegation beyond a reasonable doubt."

For purposes of the multi-victim circumstance alleged pursuant to section 667.61(e)(4), the court instructed the jury under CALCRIM No. 3181, which explained in part, "The People have the burden of proving multiple victims beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved."

After closing arguments, the court instructed the jury pursuant to CALCRIM No. 3517, which explained how to fill out the verdict forms in light of lesser included offenses. That instruction informed the jury that, "Remember whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt."

The jury commenced deliberations at 4:00 p.m. The court then excused the alternate jurors and indicated three copies of the jury instructions would be provided to the jury "[i]n a moment." The clerk's transcript contains a copy of the preliminary and final jury instructions paginated and ordered as they were read to the jury during the trial. The jury sent a note at 4:34 p.m. indicating they had reached a verdict.

## B. No Error

### 1. Applicable Law

"Under the due process clauses of the Fifth and Fourteenth Amendments, the prosecution must prove a defendant's guilt of a criminal offense beyond a reasonable doubt, and a trial court must so inform the jury." (*People v. Aranda* (2012) 55 Cal.4th 342, 356 (*Aranda*).) State law similarly requires trial courts to instruct jurors on the presumption of innocence and the prosecution's burden to prove guilt beyond reasonable doubt. (*Id.* at pp. 352–353, citing Pen. Code, § 1096 & Evid. Code, § 502.) State law further requires that the jury be instructed on the definition of reasonable doubt. (*Aranda*, *supra*, at p. 374.)

15.

Defendant maintains that pursuant to *Aranda*, *People v. Vann* (1974) 12 Cal.3d 220 (*Vann*), *People v. Elguera* (1992) 8 Cal.App.4th 1214 (*Elguera*), *People v. Crawford* (1997) 58 Cal.App.4th 815 (*Crawford*), disapproved in *Aranda*, *supra*, 55 Cal.4th at pp. 366–367 & fn. 12 & *People v. Flores* (2007) 147 Cal.App.4th 199, 210 (*Flores*), the court's failure to reinstruct the jury on reasonable doubt under CALCRIM No. 220 just prior to their deliberations violated his federal constitutional rights and state law.

In *Vann*, the court concluded the inadvertent failure to include in predeliberation instructions the standard reasonable doubt instruction amounted to federal constitutional error. The trial court's predeliberation instructions included CALJIC No. 2.01, which informed the jury it must not return a verdict based on circumstantial evidence unless "'each fact which is essential to complete a set of circumstances necessary to establish a defendant's guilt has been proved beyond a reasonable doubt.'" (*Vann*, *supra*, 12 Cal.3d at p. 226.) The court also gave an instruction that evidence of "'good character may be sufficient to raise a reasonable doubt whether a defendant is guilty .…'" (*Id.* at p. 227.) Our high court concluded these references to the reasonable doubt standard fell far short of conveying the requirement that the defendants were entitled to acquittal unless the prosecution proved beyond a reasonable doubt each element of the charged crime. (*Ibid.*) The circumstantial evidence instruction did not connect the reasonable doubt instruction to direct evidence, and the character instruction did not connect the reasonable doubt standard to any issue beside character. (*Id.* at pp. 226–227.) The court also noted that neither the trial court's remarks during jury selection as to the burden of proof nor the attorneys' statements about reasonable doubt in closing arguments cured the failure to instruct the jury that the defendants' guilt of each charged crime must be proved beyond a reasonable doubt. (*Id.* at p. 227, fn. 6.)

The Court of Appeal decisions applying *Vann*'s reasoning have held that "a trial court's predeliberation instructions connecting the reasonable doubt standard to only lesser included offenses and narrow evidentiary or procedural determinations are

insufficient to satisfy the court's constitutional duty to instruct on the prosecution's burden of proving each charged offense beyond a reasonable doubt." (*Aranda*, *supra*, 55 Cal.4th at pp. 358–359.)

For example, in *Elguera,* the trial court's predeliberation jury instructions referenced the reasonable doubt standard only in the circumstantial evidence instruction. Applying *Vann*, the Court of Appeal concluded this was constitutional error because the court had a sua sponte duty to give the instruction on reasonable doubt during the trial rather than during jury selection and to make the reasonable doubt instruction available with other written instructions. (*Elguera*, *supra*, 8 Cal.App.4th at p. 1219.) The court also concluded this error was not harmless even though (1) the trial court had given "virtually the full standard instruction on the subject in the morning at the start of jury selection"; (2) the reasonable doubt requirement had been repeatedly referenced to the venire and each prospective juror stated he or she understood it; (3) the oral and written instructions included reference to the reasonable doubt standard in the circumstantial evidence instruction; (4) the court reminded the jury just before argument that the prosecutor had the burden of proof and that no inference of guilt was to be drawn from the defendant's arrest or placement on trial; and (5) the two attorneys referred to the prosecutor's burden of proof at least eight times in argument to the jury. (*Id.* at pp. 1221–1224.)

In *Crawford*, the trial court likewise did not include an instruction on the reasonable doubt standard during trial and referenced the standard only in instructions on circumstantial evidence, lesser offenses, and deadly weapon use. (*Crawford*, *supra*, 58 Cal.App.4th at p. 820.) Relying on *Vann* and *Elguera*, the *Crawford* court concluded these instructional references to the reasonable doubt standard did not cure the trial court's inadvertent failure to include a reasonable doubt instruction. (*Crawford*, *supra*, at pp. 823–825.)

In *Flores*, the court reasoned that the failure to give the standard reasonable doubt instruction was not cured by mention of the reasonable doubt instruction as it applied to circumstantial evidence, a defendant's choice not to testify, in connection with special findings on the statute of limitations, and in connection with a section 667.61 sentence enhancement. (*Flores*, *supra*, 147 Cal.App.4th at p. 217.) The court observed that it could not be presumed that "a reasonable doubt instruction given in a *specific* context … will necessarily be understood by all of the jurors to apply *generally* to their determination of the defendant's guilt on the charged offenses." (*Ibid*.)

In *Aranda*, the defendant was charged with murder and active participation in a criminal street gang. The trial court failed to provide the pattern instruction on reasonable doubt during trial. Despite this omission, the trial court referenced the prosecution's burden of proof beyond a reasonable doubt in nine other pattern instructions. (*Aranda*, *supra*, 55 Cal.4th at p. 351.)

The jury acquitted the defendant of murder, convicted him of voluntary manslaughter as a lesser included offense, and found him guilty of active participation in a gang. Our high court determined the erroneous failure to instruct on reasonable doubt was harmless as to both convictions. (*Aranda*, *supra*, 55 Cal.4th at pp. 350–352.)

As to the prosecution's burden of proving a defendant's guilt beyond a reasonable doubt, the majority held "the omission of the standard reasonable doubt instruction will amount to a federal due process violation when the instructions that were given by the court failed to explain that the defendant could not be convicted 'unless each element of the crimes charged was proved to the jurors' satisfaction beyond a reasonable doubt.'" (*Aranda*, *supra*, 55 Cal.4th at p. 358, quoting *Vann*, *supra*, 12 Cal.3d at p. 227.) "When the trial court's instructions otherwise cover this constitutional principle, the failure to instruct with the standard reasonable doubt instruction does not constitute federal constitutional error." (*Aranda*, *supra*, at p. 358.)

18.

As to the manslaughter conviction, the justices unanimously agreed that the failure to give the pattern reasonable doubt instruction did not constitute a federal constitutional error because the trial court had referred to the reasonable doubt standard not only in its circumstantial evidence instruction, but most significantly in its detailed instructions on murder and the lesser included offenses. (*Aranda*, *supra*, 55 Cal.4th at p. 358.) The trial court repeatedly referred to the prosecution's burden of proving guilt beyond a reasonable doubt when instructing on the murder charge and its lesser included offenses, clearly and directly connecting the requisite standard of proof as to those offenses. (*Id.* at p. 361.) Moreover, the instructions informed jurors they had to find proof of "'each and every element'" beyond a reasonable doubt. (*Id.* at p. 360.)

As to the gang participation conviction, however, the justices all agreed the omission of the reasonable doubt instruction constituted federal constitutional error. Neither the instruction on the elements of the gang offense nor any other instruction given by the court "connected the reasonable doubt standard of proof to that charge." (*Aranda*, *supra*, 55 Cal.4th at p. 361.)

The court concluded this error was amenable to the harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).[9] The court explained the appropriate standard under *Chapman* to determine the prejudicial effect of the erroneous omission of the standard reasonable doubt instruction is this: "If it can be said beyond a reasonable doubt that the jury must have found the defendant's guilt beyond a reasonable doubt, the error is harmless. If the reviewing court cannot draw this conclusion, reversal is required." (*Aranda*, *supra*, 55 Cal.4th at p. 368.)

---

[9] The court expressly disapproved *Crawford*, *supra*, 58 Cal.App.4th 815 and *People v. Phillips* (1997) 59 Cal.App.4th 952, to the extent they held omission of CALJIC No. 2.90 in violation of the federal Constitution is structural error and requires automatic reversal. (*Aranda*, *supra*, 55 Cal.4th at p. 367, fn. 12.)

Applying this standard, the majority concluded there was no reasonable possibility the jury failed to apply the reasonable doubt standard when it found the defendant guilty of the gang offense. (*Aranda*, *supra*, 55 Cal.4th at p. 369.) The majority opinion pointed to the nine instructions in connection with the murder count that amply conveyed that the prosecutor must prove beyond a reasonable doubt each element of the murder charge or its lesser included offenses, as well as the street gang and firearm sentencing enhancements. (*Ibid.*) Since the burden of proof had been adequately explained for the other offenses, "'the most logical response' by the jury to the absence of instruction specifically linking the reasonable doubt standard to the gang offense count would have been to conclude that a guilty verdict on that charge was subject to the same reasonable doubt standard that had been described in the court's instructions on murder, the lesser offenses, and the sentencing allegations." (*Id.* at p. 370.)

Moreover, the majority reasoned, nothing in the instructions referred to a lesser standard of proof such as preponderance of the evidence or clear and convincing evidence. (*Aranda*, *supra*, 55 Cal.4th at p. 369.) Finally, although the court considered it "of lesser significance than the instructions given at trial and the jury's verdicts in the case," the trial court's recital of CALJIC NO. 2.90 and additional references made to the venire to clarify the reasonable doubt standard weighed against finding prejudice. (*Aranda*, *supra*, at p. 371.) The majority described how the trial court "repeatedly explained the connection between the charged crimes and the reasonable doubt standard" over a three-day period, and thus "undertook extensive effort during jury selection to impress upon the prospective jurors the meaning, application, and magnitude of the beyond-a-reasonable-doubt standard of proof, and it painstakingly elicited from the prospective jurors their understanding and acceptance of that principle." (*Id.* at p. 372.) Based on the entire record, the court concluded "the jury's verdict on the gang offense charge must have been based on a finding of guilt beyond a reasonable doubt." (*Id.* at p. 373.)

### 2. Analysis

We begin by observing that this case is fundamentally unlike *Aranda, Vann, Elguera, Crawford,* and *Flores* because it does not involve a failure to give a reasonable doubt instruction during trial. In each of those cases, either references to the reasonable doubt instruction were given only in connection with other instructions, during jury selection, and/or during oral argument. Here, there is no dispute the *impaneled* jury, as opposed to the venire, was instructed by the court on the reasonable doubt standard under CALCRIM No. 103 at the outset of the trial.[10] The jury was informed this was an instruction of the court, and we must presume the jury understood and followed the court's instructions. (*People v. Edwards*, *supra*, 57 Cal.4th at p. 746.)

Defendant's central contention, however, is that providing CALCRIM No. 103 at the outset of the trial is really no different than giving a reasonable doubt instruction during jury selection, which, by itself, does not satisfy due process. (*Aranda*, *supra*, 55 Cal.4th at pp. 372–373 [constitutional error occurred even though trial court took "extensive effort during jury selection to impress upon the prospective jurors the meaning, application, and magnitude of the beyond-a-reasonable-doubt standard of proof, and it painstakingly elicited from the prospective jurors their understanding and acceptance of that principle"].) Relying on *Elguera*, defendant argues any instruction on reasonable doubt given to the impaneled jury before the presentation of evidence fatally attenuates the effectiveness of the instruction. (*Elguera*, *supra*, 8 Cal.App.4th at pp. 1222–1223.) Beyond that, defendant maintains, none of the other instructions after the close of evidence sufficiently connected the beyond-a-reasonable-doubt standard to the charges and each of their elements.

---

**10** The pattern instruction under CALCRIM No. 103 is nearly identical to CALCRIM No. 220.

In *Elguera*, a virtually full standard instruction on reasonable doubt was given during jury selection, it was repeatedly referred to during examination of the prospective jurors, and each juror stated he or she understood it. (*Elguera*, *supra*, 8 Cal.App.4th at p. 1221.) Even in combination with other references to the reasonable doubt standard during trial and in the attorneys' closing arguments, the *Elguera* court still concluded the failure to give nearly the full instruction during trial was prejudicial. (*Id.* at pp. 1222–1224.)

The court reasoned the instruction was not given to actual jurors who did not know whether they would ultimately serve in the case—they could have viewed the instruction as hypothetical and failed to give it the same attention they would have had they been impaneled and sworn. (*Elguera*, *supra*, 8 Cal.App.4th. at p. 1222.) Second, because the standard was not referenced to the jury after the presentation of evidence, any intellectual awareness the jurors had that the standard applied "may not have been accompanied by the sense of centrality and importance the instruction should carry." (*Ibid.*) Although there were only five and one-half hours between jury selection and the jury's deliberation, *Elguera* concluded that, because the jury was not given an oral or written charge on the definition of reasonable doubt, it was unlikely they would remember what the court had told them hours earlier during jury selection. (*Id.* at pp. 1222–1223.)

Based on *Elguera*'s reasoning, defendant argues that if jurors were unlikely to remember a reasonable doubt instruction given to them less than six hours before deliberations as in *Elguera*, it is even more unlikely the jurors here would have remembered the CALCRIM No. 103 instruction, which was given on a Friday and the jury did not start deliberating until the following Monday afternoon.

There are two distinctions, though, between this case and *Elguera* (as well as *Aranda, Vann, Crawford,* and *Flores*) that are critical. The CALCRIM No. 103 reasonable doubt instruction given here was read to the impaneled jury, it was not read to prospective jurors as in *Elguera* or *Aranda*. As stated in *Flores* and reiterated in *Aranda*,

22.

"no decision has viewed instructions and remarks at [voir dire] as an adequate substitute for the court's duty to instruct the jurors prior to deliberation on the principle of proof beyond a reasonable doubt" and that precedent has found it is "'unreasonable to expect prospective jurors … to give the necessary attention and weight to instructions given by a trial court during jury selection.'" (*Aranda*, *supra*, 55 Cal.4th at p. 362, fn. 11, quoting *Flores*, *supra*, 147 Cal.App.4th at p. 215.) Here, the jury had no reason to treat the CALCRIM No. 103 instruction as hypothetical or to give it less attention because each juror had already been selected and sworn. And, in its opening instructions to the jury, the court identified its statements as "preliminary instructions."

Moreover, the trial court told the jury there would be multiple copies of the jury instructions to review during deliberations, and after the final instructions were read, the court reiterated the jury was to be given three written copies of the instructions during their deliberations. Thus, unlike in *Elguera* or any of the other cases cited, the jury had access to a written copy of the reasonable doubt standard at the time of their deliberations.

Defendant argues the jury may not have been provided the written instructions because deliberations ended after only about 35 minutes. Defendant also argues it was possible the court did not provide the entire set of instructions that included the preliminary instructions given at the outset of trial. On this record, we cannot presume the jury did not have the full set of written instructions during their deliberations. The court told the jury they would have a written copy of the instructions, and then reiterated after reading the final instructions that three copies of the written instructions would be provided to the jury momentarily. Although deliberations lasted approximately 35 minutes, that alone provides no basis to conclude the jury did not have the instructions with them during that timeframe as the court indicated they would. There is also no reason to conclude those instructions were anything less than the full and complete set

23.

that are included in the clerk's transcript and are paginated by handwritten number, ordered in the sequence the trial court read them to the jury.[11]

Beyond that, there were several instructions given just before deliberations that connected the reasonable doubt standard to the charges and elements of the alleged offenses and the special One Strike law allegations. The jury was instructed on the elements necessary to prove a lewd or lascivious act against a child under the age of 14 years pursuant to section 288(a) (without force) and section 288(b)(1) (with force). Both instructions indicated it was the People's burden to prove all the elements. Under the instruction for deliberation and completing the verdict forms for lesser included offenses under CALCRIM No. 3517, the jury was instructed that whenever the court told them the People must prove something, it means "they must prove it beyond a reasonable doubt." This instructional statement echoed what the jury was instructed under CALCRIM No. 103, which also stated that "Whenever I [the court] tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I [the court] specifically tell you otherwise."

The court also instructed the jury pursuant to CALCRIM No. 1191B, which explained that if the People proved beyond a reasonable doubt that defendant committed one or more of the charged crimes, the jury could but was not required to conclude that defendant was "disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit the other sex offenses charged in this case." As part of this instruction, the jury was told that "[t]he People must still prove each charge and allegation beyond a reasonable doubt." Finally, in considering the multi-victim circumstance allegations under section 667.61, the jury was

---

[11]    Defendant's argument is speculative. The jury was also told during predeliberation instructions that they would receive the admitted trial exhibits in the jury room for their deliberations. No one is arguing those exhibits were never received by the jury simply because the deliberation period was relatively short. The reason is straightforward: there is no basis in the record to argue the court did not do what it indicated it would do.

instructed it was the People's burden to prove this additional allegation beyond a reasonable doubt. In conjunction with the reasonable doubt instruction under CALCRIM No. 103, the impaneled jury was instructed on reasonable doubt orally and in writing, the instruction included a definition of the standard, and the reasonable doubt standard was referenced several additional times in the predeliberation instructions after the close of evidence, connecting that standard of proof to the elements of each charged crime and special allegations.

The trial court has broad discretion in the timing of instructions. (§ 1093, subd. (f) ["At the beginning of the trial or from time to time during the trial, … the trial judge may give the jury such instructions on the law applicable to the case .…"].) There is no requirement the trial court *must* instruct the jury *after* the close of evidence or *reiterate* instructions at the close of evidence in the absence of juror confusion. (*People v. Chung* (1997) 57 Cal.App.4th 755, 759–760.) But even so, here the jury had a written copy of the instructions for review during deliberations. Also, CALCRIM No. 103 provided a definition of reasonable doubt. Defendant maintains the failure to define reasonable doubt for the jury again after the close of instruction was an error of state law. (*Aranda*, *supra*, 55 Cal.4th at p. 374.) For all the same reasons already discussed, the jury was instructed orally and in writing on the definition of reasonable doubt during trial. There was no error of state law in this regard.

It would have been ideal to instruct the jury *again* on reasonable doubt before they started their deliberations. As *Elguera* noted, "[i]f any phrase should be ringing in the jurors' ears as they leave the courtroom to begin deliberations, it is 'proof beyond a reasonable doubt.'" (*Elguera*, *supra*, 8 Cal.App.4th at pp. 1222–1223.) Indeed, the trial court indicated during an instructional conference that it would give the reasonable doubt instruction again. Nevertheless, under the particular circumstances here, where the court read the impaneled jury the reasonable doubt instruction under CALCRIM No. 103 at the outset of a two-day trial (which straddled a weekend) and written copies of the

25.

instructions were provided to the jury during deliberations, we cannot conclude there was any error. Moreover, when considering the CALCRIM No. 103 instruction *along with* the other predeliberation instructions that connected the reasonable doubt standard to the elements of the charged offenses and the special allegations, the failure to reiterate the reasonable doubt instruction under CALCRIM No. 220 just before deliberations did not result in an error of state law or a constitutional due process violation.

## C. No Prejudice

Finally, even assuming it was error to give the reasonable doubt instruction at the beginning of trial rather than at the close of evidence, we find no prejudice under the modified *Chapman* analysis articulated in *Aranda.* (*Aranda*, *supra*, 55 Cal.4th at p. 368 [without relying on its view of the overwhelming weight of the evidence supporting the verdict, if the reviewing court is able to conclude that "beyond a reasonable doubt that the jury must have found the defendant's guilt beyond a reasonable doubt, the error is harmless"].)

As discussed, the impaneled jury was formally instructed on the reasonable doubt standard under CALCRIM No. 103 at the outset of the trial, which also defined reasonable doubt, and a copy of that written instruction was given to the jury for review during deliberations. Several other instructions given at the close of evidence connected the reasonable doubt standard to the crimes charged and effectively explained that defendant could not be convicted unless the prosecution proved the elements of each charged crime and the special allegations beyond a reasonable doubt. These instructions included those on the substantive offenses, the multiple-victim circumstance allegations, and the instruction under CALCRIM No. 1191B. These instructions, together with the oral and written instructions under CALCRIM No. 103, instructed the jury on the reasonable doubt standard of proof that applied to each of the offenses and One Strike law allegations. (See *People v. Lewis* (2001) 26 Cal.4th 334, 390 [reviewing court must

presume jurors are intelligent and capable of correctly understanding, correlating, applying and following the trial court's jury instructions].)

No instructions mentioned any lesser burden of proof, or contained any statements that conflicted with the court's repeated instruction that it was the prosecutor's burden to prove guilt beyond a reasonable doubt. (*Aranda*, *supra*, 55 Cal.4th at pp. 369, 373.) In closing arguments, counsel reiterated the reasonable doubt standard applied to every element of each offense. The prosecutor told the jury, "I have elements that I must prove to each and every one of you beyond a reasonable doubt." In rebuttal, the prosecutor again stated the burden: "Reasonable doubt is described in the jury instruction and I'm not going to reread it. Each and every one of you are well aware that the People do have to prove to each and every one of you this case beyond a reasonable doubt."

Defense counsel's closing argument also focused on reasonable doubt using a chart and explaining that "the burden of proof in this case is proof beyond a reasonable doubt. Nothing more; nothing less." Defense counsel also told the jury it was the prosecutor's burden to prove "each and every count, each and every element of that count beyond a reasonable doubt." These arguments did not contradict the court's instructions nor would they have misled the jury to believe defendant's guilt could be adjudged on any standard less than beyond a reasonable doubt. (*Aranda*, *supra*, 55 Cal.4th at p. 370 [nothing in counsel's arguments invited the jury to apply a standard of proof less than beyond a reasonable doubt].)

In sum, the court instructed the impaneled jury on the standard of reasonable doubt in initial instructions given just before opening arguments; several of the instructions given after the close of evidence made clear it was the People's burden to prove each and every element of the charged offenses beyond a reasonable doubt, including the One Strike allegations; the reasonable doubt standard was discussed by counsel in closing arguments and nothing counsel said contradicted the court's reasonable doubt instruction; and the jury was provided written copies of the jury instructions, which included

27.

CALCRIM No. 103. Considering all of this together, we conclude beyond a reasonable doubt the jury's verdict must have been based on a finding of guilt beyond a reasonable doubt.

## III. Constitutionally Sufficient Notice of One Strike Law Application

### A. Background

The information alleged three counts of lewd or lascivious acts against a child under the age of 14 years, one of which was committed with force under section 288(b)(1) (Jane 1, count 3), and two were committed without any force, violence, duress, menace, or fear of immediate bodily injury under section 288(a) (Jane 2, count 1, & Jane 1, count 2). As to each count, there was an enhancement allegation that defendant had been convicted in the present case or cases of committing an offense specified in section 667.61(c) against more than one victim, within the meaning of section 667.61(e)(4). These special allegations did not reference to or cite section 667.61(b) or section 667.61(j)(2), the two subdivisions that provide the applicable penalties for conviction of a qualifying offense under section 667.61(c) with one aggravating circumstance pled and found true within the meaning of section 667.61(e).

The parties dispute whether the information provided constitutionally adequate notice of the 25-year-to-life sentence applicable under section 667.61(j)(2) because the One Strike special allegations failed to expressly reference that section.

### B. Applicable Law

The One Strike law under section 667.61 sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes committed under certain specified circumstances. (*People v. Mancebo* (2002) 27 Cal.4th 735, 741 (*Mancebo*).) When it is triggered by specifically pleaded and proven aggravating circumstances, the One Strike law mandates indeterminate terms for sex crimes committed within its ambit, varying by the minimum term for parole eligibility: 15 years to life; 25 years to life; and life without the possibility of parole (LWOP).

28.

The One Strike law's sentencing structure provides escalating indeterminate terms depending on the type and number of circumstances present, as identified and enumerated in section 667.61, subdivision (d) and section 667.61(e).[12]  For example, when an enumerated sex crime under section 667.61(c) is committed with no pleaded or proven circumstance under section 667.61, subdivision (d) and only one pleaded and proven circumstance under section 667.61(e), the punishment is 15 years to life. (§ 667.61(b).)  But, when a sex crime enumerated under section 667.61(c) is committed with one or more pleaded and proven circumstance(s) under section 667.61, subdivision (d) *or* two or more pleaded and proven circumstances under section 667.61(e), the punishment is 25 years to life.  (§ 667.61, subd. (a).)

If the qualifying sex offense under section 667.61(c) is committed against a victim under the age of 14 years, with the combination of pleaded and proven circumstances described in section 667.61, subdivision (a) or 667.61(b), the punishment is harsher still and ranges from LWOP to 25 years to life.  (§ 667.61(j)(1) & (2).)  Similarly, certain enumerated sex offenses with pleaded and proven circumstances under section 667.61, subdivision (d) and/or (e) that are committed against minors ages 14 years or older invoke harsher sentences ranging from LWOP to 25 years to life.  (§ 667.61, subds. (l), (m) & (n).)  In other words, the One Strike law's sentencing structure not only punishes enumerated sex crimes committed under specific circumstances more harshly, those harsher punishments increase *further* depending on the age of the victim.

To be subjected to any of the harsher penalties under the One Strike law, due process mandates a defendant be provided sufficient notice.  """No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are

---

[12]  There are currently seven different circumstances identified under subdivision (d), and another seven circumstances identified under subdivision (e) of section 667.61.  (§ 667.61, subds. (d)(1)–(7) & (e)(1)–(7).)

29.

among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." [Citations.] "A criminal defendant must be given fair notice of the charges against him in order that he may have a reasonable opportunity properly to prepare a defense and avoid unfair surprise at trial."' [Citation.] This goes for sentence enhancements as well as substantive offenses: A defendant has the 'right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes.' (*Mancebo*[, *supra*,] 27 Cal.4th [at p. ]747.)" (*People v. Anderson* (2020) 9 Cal.5th 946, 953.)

Moreover, the One Strike law itself contains statutory pleading requirements—the circumstances applicable under section 667.61, subdivisions (d) and/or (e) must be specifically pled and proven. (§ 667.61, subd. (o) ["The penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact."]; see *Mancebo*, *supra*, 27 Cal.4th at p. 751.)

### C. Analysis

Defendant argues our high court's decision in *Mancebo* compels a conclusion that the prosecution's failure in this case to expressly reference section 667.61(j)(2) in pleading the multiple-victim aggravating circumstance under section 667.61(e)(4) constitutes insufficient notice of the longer sentence imposed under section 667.61(j)(2).

In *Mancebo*, the defendant had kidnapped two victims, both at gunpoint, at different times, and committed multiple sex crimes against them. (*Mancebo*, *supra*, 27 Cal.4th at pp. 739–740.) The information alleged 10 sex crimes involving two victims. (*Id.* at p. 740.) As to all counts, it was alleged the defendant personally used a gun within the meaning of section 12022.5, subdivision (a) (section 12022.5(a)). (*Mancebo*, *supra*, at p. 740.) As to six of those counts, it was alleged the circumstances of kidnapping and gun use applied within the meaning of 667.61, subdivision (a) and former subdivision (e);

30.

regarding two other sex offense counts, gun-use and tying/binding the victim circumstances were alleged under section 667.61, subdivision (a) and former subdivision (e)(4) and (6). (*Mancebo*, *supra*, at p. 740.) The information never expressly alleged a multiple-victim circumstance under section 667.61, former subdivision (e)(5), nor was the information ever amended to include such an allegation. (*Mancebo*, *supra*, at p. 740.) The defendant was convicted of all counts, and all enhancement allegations were found true. (*Ibid*.) In sentencing the defendant on two of the counts under the One Strike law, the trial court substituted out the pleaded gun-use circumstance under section 667.61(e) and replaced it with the unpleaded multiple-victim circumstance under section 667.61(e), and imposed a 25-year-to-life term under section 667.61, subdivision (a). (*Mancebo*, *supra*, at p. 740.) The trial court then used the gun-use circumstance to impose the firearm enhancement under section 12022.5(a). (*Mancebo*, *supra*, at p. 740.)

On appeal, our high court concluded that imposition of the gun-use enhancement under section 12022.5(a) violated section 667.61's pleading and proof requirements, implicated the defendant's due process rights, and resulted in an unauthorized sentence. Under the plain language of section 667.61, subdivision (f) and former subdivision (i), the existence of any factual circumstances under subdivisions (d) or (e) were to be alleged in the accusatory pleading. None of the charging documents ever alleged a multiple-victim circumstance under section 667.61, former subdivision (e)(5), so substituting the unpleaded multiple-victim circumstance for the first time at sentencing violated the statute's pleading requirements. (*Mancebo*, *supra*, 27 Cal.4th at p. 751.)

In *Mancebo*, the Attorney General argued the multiple-victim circumstance was sufficiently alleged because the pleading charged the defendant with committing two qualifying offenses under section 667.61(c) against two different victims—the multiple-victim circumstance was inherent in the charges. (*Mancebo*, *supra*, 27 Cal.4th at pp. 744–745.) The court rejected this argument, noting that the statute required

31.

section 667.61, subdivisions (d) and (e) be specifically pleaded and proven. (*Mancebo*, *supra*, at p. 745.) Moreover, the pleading was inadequate because it failed to put the defendant on notice that the People, for the first time at sentencing, would seek to use the unpleaded multiple-victim circumstance to secure indeterminate One Strike terms under section 667.61, subdivision (a) *and* use the circumstance of gun use to secure additional enhancements under section 12022.5(a). (*Mancebo*, *supra*, at pp. 752–754.)

*Mancebo* is fundamentally different from this case in that the multiple-victim circumstance was expressly alleged here, whereas in *Mancebo* it was entirely absent. *Mancebo* concluded, however, that sufficient notice of the multiple-victim circumstance could not be given simply by alleging facts in the information related to multiple victims. (*Mancebo*, *supra*, 27 Cal.4th at pp. 752–754.) Defendant essentially argues the same principle applies with respect to the age of the victim in this case. Even though the pleading identifies the age of the victim at the time of the offense as being under 14 years, and it could be extrapolated from this pleaded fact that the harsher punishment under section 667.61(j)(2) may be at issue, the information did not reference section 667.61(j)(2) and, thus, did not supply defendant with notice he may be subjected to this harsher punishment.

We disagree that *Mancebo* extends this broadly. *Mancebo* considered the statutory and due process notice issues surrounding an unpleaded multiple-victim circumstance under subdivision (e) of section 667.61. That decision does not encompass whether, beyond pleading the qualifying circumstances under subdivisions (d) and (e) of the statute that trigger the law's application, the particular corresponding sentencing penalties under the One Strike law also must be expressly pleaded to provide sufficient constitutional notice of their application. Several factors influence which indeterminate term is to be imposed under the One Strike law such as the age of the victim and the age of the offender, but *Mancebo* did not consider whether those factors must be pleaded to provide sufficient notice for purposes of due process.

32.

Here, for each count, the information includes a special enhancement allegation under the One Strike law that expressly pleads that defendant committed qualifying offenses under section 667.61(c) that involve multiple victims under section 667.61(e)(4).[13] Those special allegations identify the One Strike law, indicate it may apply for purposes of punishment, and identify the particular circumstance that triggers One Strike sentencing in this particular case. That complies with the statutory pleading requirement under section 667.61, subdivision (o), and with *Mancebo*'s holding that the statute and due process require the qualifying circumstances under subdivisions (d) and (e) to be specifically pleaded. (*Mancebo*, *supra*, 27 Cal.4th at p. 754 [fair notice can be "conveyed by a reference to the description of the qualifying circumstance … in conjunction with a reference to section 667.61 or, more specifically, 667.61, subdivision (e), or by reference to its specific numerical designation under subdivision (e)"].)

Beyond that, the information allegations make clear there is only one possible sentence that could be imposed for the multiple-victim circumstance if proven true. The underlying offenses charged were for a lewd or lascivious act against a child under the age of 14 years pursuant to section 288(a) and section 288(b)(1). These underlying offenses necessarily required the prosecution to prove the victims were under the age of 14 years at the time of the offenses—a fact expressly pled in the information.

When, as here, the underlying qualifying offenses under section 667.61(c) *necessarily* require proof the victim was under the age of 14 years at the time of the offense, the circumstances pled and proven under subdivisions (d) and/or (e) of section 667.61 will mandate the harsher sentences under section 667.61(j). The harsher punishments provided under section 667.61(j) are not discretionary—subdivision (j)(1)

---

**13** Technically, the One Strike statute is considered an alternative sentencing scheme, not an enhancement. (*People v. Jones* (1997) 58 Cal.App.4th 693, 708–709.)

and (j)(2) state the punishments they provide "shall" be imposed if the requirements of the subdivision are met. Moreover, section 667.61, subdivision (a) and section 667.61(b) both expressly state they do not apply if section 667.61(j) applies. As a result, the multiple-victim circumstance alleged under section 667.61(e)(4), if proven, could lead to *only one* possible punishment under the One Strike law upon conviction for the underlying qualifying offenses alleged here—the 25-year-to-life term provided under subdivision (j)(2). Unlike the defendant in *Mancebo*, defendant here had adequate notice of what qualifying circumstances would be used to sentence him under the One Strike law, what facts he needed to contest or dispute, what his maximum sentencing exposure would be under the One Strike law, and what facts he would need to admit if he were to waive a jury determination.

Defendant maintains the base indeterminate term for a qualifying sex offense committed with a single multiple-victim circumstance under section 667.61(e)(4) is provided under section 667.61(b)—15 years to life. Since the prosecutor did not expressly allege that section 667.61(j)(2) would apply, defendant argues section 667.61(b) has to apply, analogous to *People v. Wilford* (2017) 12 Cal.App.5th 827 (*Wilford*).

In *Wilford*, the defendant was charged with a violation of section 273.5, subdivision (a), which carried a sentence range of two, three, or four years. (*Wilford*, *supra*, 12 Cal.App.5th at pp. 835–836.) The information also included special allegations the defendant had suffered prior qualifying convictions within the meaning of section 273.5, subdivision (h)(1) (section 273.5(h)(1)), which had the effect of imposing a 15-day minimum jail sentence if the defendant was sentenced to probation.[14] (*Wilford*,

---

[14] Section 273.5(h)(1) states as follows: "If probation is granted, or the execution or imposition of a sentence is suspended, for any defendant convicted under subdivision (a) who has been convicted of any prior offense specified in subdivision (f), the court shall impose one of the following conditions of probation: [¶] (1) If the defendant has suffered one prior conviction within the previous seven years for a violation of any offense specified in subdivision (f), it shall

34.

*supra*, at p. 836.)  These allegations did not reference section 273.5, subdivision (f) (section 273.5(f)).  (*Wilford*, *supra*, at p. 836.)

At sentencing, the prosecutor sought to sentence the defendant under section 273.5(f)(1), which had a higher sentencing range of two, four or five years.  (*Wilford*, *supra*, 12 Cal.App.5th at p. 836.)  Like section 273.5(h)(1), the higher penalty provision under section 273.5(f)(1) applied if it was proven true that defendant had a prior conviction for an offense identified under section 273.5(f).  The prosecutor argued, and the trial court ultimately agreed, that because the prior convictions alleged for purposes of section 273.5(h)(1) had been pleaded and proven, those prior conviction allegations could be used to impose the higher penalty under section 273.5(f)(1), too, despite that section 273.5(f)(1) had never been expressly pleaded.  (*Wilford*, *supra*, at p. 836.)  On appeal, the defendant argued that because the prosecutor had pleaded section 273.5(h)(1) instead of section 273.5(f)(1), the court could not sentence him under section 273.5(f)(1).  (*Wilford*, *supra*, at p. 836.)  The appellate court agreed the charging document had not provided adequate notice defendant could be sentenced under the higher sentencing range provided in section 273.5(f)(1) because that subdivision was not expressly pleaded, despite that the qualifying prior convictions necessary under section 273.5(f)(1) had been pleaded and proven.  (*Wilford*, *supra*, at p. 840.)

*Wilford* is distinguishable.  Under section 273.5, there are two different sentencing consequences that may apply if a particular type of prior conviction is pleaded and proven—defendant could be subjected to the higher sentencing triad under

be a condition of probation, in addition to the provisions contained in Section 1203.097, that he or she be imprisoned in a county jail for not less than 15 days."

Section 273.5, subdivision (f)(1) states that "[a]ny person convicted of violating this section for acts occurring within seven years of a previous conviction under subdivision (a), or subdivision (d) of Section 243, or Section 243.4, 244, 244.5, or 245, shall be punished by imprisonment in a county jail for not more than one year, or by imprisonment in the state prison for two, four, or five years, or by both imprisonment and a fine of up to ten thousand dollars ($10,000)."

section 273.5(f) or he could be subjected to a 15-day mandatory minimum jail time if he was sentenced to probation. By expressly citing section 273.5(h)(1) rather than section 273.5(f)(1), the prosecutor was selecting among the possible consequences that could be imposed if the qualifying convictions were found true and choosing section 273.5(h)(1).

The One Strike law is different from section 273.5. Section 667.61, subdivision (a) and section 667.61(b) expressly state they apply "[e]xcept" where section 667.61(j), among other subdivisions, applies. Because of this express carve-out, section 667.61(b) and section 667.61(j) are mutually exclusive—the two subdivisions cannot both potentially apply just because the qualifying multiple-victim circumstance is found true. Moreover, because of the exception language in subdivisions (a) and (b), the prosecutor has no discretion to select subdivision (a) or (b) for sentencing if subdivision (j) applies.

Defendant urges us to follow *People v. Jimenez* (2019) 35 Cal.App.5th 373 (*Jimenez*), which held the failure to expressly plead section 667.61(j)(2) did not provide sufficient notice it might apply at sentencing. There, the defendant was charged with, among other things, 13 sex crimes against more than one victim. (*Jimenez*, *supra*, at pp. 377–378) In expressly pleading a multi-victim circumstance for each of these 13 crimes, the charging document referred only to subdivisions (b) and (e) of section 667.61. (*Jimenez*, *supra*, at p. 394.) The trial court sentenced the defendant to 25-year-to-life terms under section 667.61(j)(2) for nine of these crimes, which involved children under the age of 14 years. (*Jimenez*, *supra*, at p. 378.) On appeal, the defendant claimed the charging document referenced only section 667.61(b), and it did not give him fair notice of the 25-year-to-life term imposed under subdivision (j)(2) for committing the qualifying offenses upon multiple victims, at least one of whom was under the age of

14 years.[15]  Relying on *Mancebo,* the court held the sentences imposed under subdivision (j)(2) could not be based on a charging document that referred only to subdivision (b) and subdivision (e) of section 667.61 in pleading a multi-victim circumstance.  (*Jimenez, supra*, at pp. 396–397.)

Two Courts of Appeal subsequently disagreed with *Jimenez* in published decisions.  In *In re Vaquera* (2019) 39 Cal.App.5th 233, review granted November 26, 2019, S258376 (*Vaquera*), the defendant argued his due process rights were violated by the trial court's imposition of a 25-year-to-life sentence under section 667.61(j)(2) because that subdivision was not expressly alleged in the information.  Rather, the prosecution had alleged a multiple-victim circumstance under section 667.61, subdivision (e)(4) in combination with section 667.61(b), just like in *Jimenez*.  (*Vaquera, supra*, at pp. 235–236.)

In *Vaquera*, however, the court concluded the pleading complied with due process principles and supplied the defendant with sufficient notice of the harsher term of 25 years to life under section 667.61, subdivision (j)(2).  Although the charging document cited section 667.61(b), which provides for a term of 15 years to life, that statutory reference put the defendant on notice he faced the hasher term under subdivision (j)(2).  (*Vaquera, supra*, 39 Cal.App.5th at p. 235.)  By virtue of the facts alleged in the information, the defendant was on notice the counts against him involved children under the age of 14 years.  Not only did the charges require the prosecution to prove the victims were under the age of 14 years at the time of the offense, the information specifically pleaded both children were under the age of 14 years at the time of the offenses.  (*Vaquera, supra*, at pp. 236, 240–241.)  Moreover, similar to *People v. Tennard* (2017)

---

**15**     *Jimenez* pointed out section 667.61(j)(2) does not expressly state whether, in the multiple-victim circumstance situation, all the victims must be under the age of 14 years or only one of the victims must be under the age of 14 years.  Here, all offenses alleged were necessarily committed against a child under the age of 14 years and their ages were expressly pleaded; this potential ambiguity is not relevant here.  (See *Jimenez, supra*, 35 Cal.App.5th at p. 397, fn. 4.)

18 Cal.App.5th 476, 487–488, the court observed section 667.61(j)(2) was expressly referenced in section 667.61(b) as an exception. (*Vaquera*, *supra*, at pp. 241–242.) The court also concluded no prejudice had been shown. (*Id.* at p. 242.) Finally, the court distinguished *Mancebo* and *Wilford*. (*Vaquera*, *supra*, at pp. 242–244.)[16]

In *People v. Zaldana* (2019) 43 Cal.App.5th 527, review granted March 18, 2020, S259731 (*Zaldana*), the court also declined to follow *Jimenez.* Like *Jimenez* and *Vaquera*, the charging document alleged that "'within the meaning of Penal Code section 667.61(b) and (e)(4) … [t]he defendant … committed an offense specified in Section 667.61(c) against more than one victim.'" (*Zaldana*, *supra*, at p. 535.) The *Zaldana* court concluded the reference to section 667.61(b) in the pleading did not result in deficient notice of the harsher penalty that would apply under section 667.61(j)(2) because subdivision (j)(2) is expressly referenced in subdivision (b) as an exception to the shorter 15-year-to-life term provided in subdivision (b). (*Zaldana*, *supra*, at p. 535.) Because the information alleged that both of the defendant's victims were under the age of 14 years when he molested them, there was no doubt he was on notice he could be subject to subdivision (j)(2). (*Zaldana*, *supra*, at p. 535.)

The *Zaldana* court rejected the defendant's argument that by citing section 667.61(b), the prosecutor must have been exercising charging discretion to select the lower 15 year-to-life term provided in section 667.61(b), rather than the longer 25 year-to-life term provided in section 667.61(j)(2). (*Zaldana*, *supra*, 43 Cal.App.5th at p. 535.) The court explained that subdivision (b) expressly states that a sentence of 15 years to life is required "'"[e]xcept as provided in subdivision (j) .…"'"" (*Zaldana*, *supra*,

---

[16]    *Vaquera* distinguished *Wilford* for the same basic reason we do: section 667.61(b) expressly excepts application if the circumstances articulated in section 667.61(j) apply, unlike section 273.5(f) and section 273.5(h), which do not contain express exceptions for application of the other subdivision. (*Vaquera*, *supra*, 39 Cal.App.5th at p. 244 ["Were it not for the section 667.61, subdivision (j)(2) exception, which is noted in subdivision (b), Vaquera's situation would be much more closely aligned with *Wilford*."].)

at p. 536 quoting *Vaquera*, *supra*, 39 Cal.App.5th at p. 245 & citing § 667.61(b).)

"'Because the Legislature used the word "shall," and because the prosecution properly pleaded and proved multiple victim allegations for qualifying sex offenses in which the victims were under 14 years of age, the trial court was *required* to impose a 25-year-to-life sentence under section 667.61, the One Strike law.'" (*Zaldana*, *supra*, at p. 536, quoting *Vaquera*, *supra*, 39 Cal.App.5th at p. 245 & citing § 667.61, subd. (f).)

We agree with *Vaquera* and *Zaldana* that because the multiple-victim circumstances under section 667.61(e)(4) was pleaded, proven, and found true by the trier of fact, the pleading situation here is fundamentally different from *Mancebo* where the multiple-victim circumstance was unpleaded. For that reason, we are unpersuaded by *Jimenez*'s reliance on *Mancebo* for the proposition that section 667.61(j)(2) must be pleaded expressly to provide sufficient notice that the 25 year-to-life term will apply.

Additionally, the multiple-victim circumstances here were pled differently from *Jimenez*, *Vaquera*, and *Zaldana*. The special allegation invoking application of the One Strike law does not reference section 667.61(b); instead, the information alleges that in the commission of the underlying crimes (§ 288(a) (counts 1 & 2) and § 288(b)(1) (count 3)), defendant has been convicted in the present case or cases of committing an offense specified in section 667.61(c) against more than one victim within the meaning of section 667.61(e)(4).

As discussed by *Vaquera* and *Zaldana*, even a reference to section 667.61(b) was sufficient notice of the applicability of section 667.61(j)(2) because, as we have already noted, section 667.61(b) expressly carves out section 667.61(j)(2) as an exception to its application. That provided sufficient notice that section 667.61(j)(2), rather than section 667.61(b), would apply given the fact the underlying offenses necessarily involved children under the age of 14 years at the time of the offense.

Defendant points out that *Zaldana* agreed with *Vaquera* that the "key to adequate notice" was the charging document's reference to section 667.61(b), which expressly

incorporates the longer sentence under section 667.61(j). (*Zaldana*, *supra*, 43 Cal.App.5th at p. 535 ["We agree with *Vaquera* that was key to adequate notice— [subdivision (b)] specifically directed Zaldana to subdivision (j)(2) and its longer prison term."].) Thus, because subdivision (b) expressly references subdivision (j) as an exception, there was at least a basis for *Zaldana* and *Vaquera* to hold the defendant had notice of subdivision (j). But here, defendant argues, the failure to plead even section 667.61(b), let alone the failure to expressly plead subdivision (j)(2), distinguishes this case from *Vaquera* and *Zaldana* and renders the notice even more woefully deficient. Defendant maintains the information's allegation of only one circumstance under section 667.61(e)(4) for multiple victims "requires only a 15 year to life sentence" as provided under subdivision (b).

The lack of reference to section 667.61(b) in the information here strikes us as even more straightforward than the pleadings in *Vaquera* and *Zaldana*. In both of those cases, the defendants argued reference to subdivision (b) in the One Strike allegations was essentially an exercise of the prosecutor's charging discretion to select sentencing under subdivision (b) rather than subdivision (j)(2). As both *Zaldana* and *Vaquera* explained, application of section 667.61(j)(2) is mandatory when the prosecutor properly pleads and proves the multiple-victim circumstance for qualifying sex offenses in which the victims are under the age of 14 years. Subdivision (b) expressly states it applies "[*e*]*xcept as provided in subdivision … (j)*" and subdivision (j)(2) states that any person coming within its provisions "*shall* be punished by imprisonment in the state prison for 25 years to life." (§ 667.61(b) & (j)(2), italics added; *Zaldana*, *supra*, 43 Cal.App.5th at pp. 535–536; *Vaquera*, *supra*, 39 Cal.App.5th at p. 245.)

Without any citation to section 667.61(b) in the information here, there is no basis on which defendant could conclude the prosecutor was making such an election. Further, because conviction on the qualifying offenses under section 667.61(c) were all dependent

40.

on proving each of the victims was under the age of 14 years, the only applicable sentencing provision under the One Strike law was section 667.61(j)(2).

Even without express citation to section 667.61(j)(2), the law cited and the facts alleged in the information gave fair notice that defendant necessarily faced the 25-year-to-life term under subdivision (j)(2) on each count pursuant to the One Strike law if the qualifying offenses and the multiple-victim circumstance under section 667.61(e)(4) were all proven. The prosecutor alleged underlying offenses that necessarily require proving the victim is under the age of 14 years at the time of the offense—a fact expressly pleaded; the information included special allegations under the One Strike law that each charged crime was a qualifying offense under section 667.61(c) and the multiple-victim circumstance applied under section 667.61(e). The specific statutory pleading requirements were met under section 667.61, subdivision (o), and under the express language of the statute, only subdivision (j)(2) could apply if defendant was convicted of the qualifying offenses and the special One Strike allegations were found true.

Finally, even assuming the failure to expressly plead section 667.61(j)(2) constituted deficient notice that subdivision (j)(2) would apply under the One Strike law, there is no evidence of any prejudice. (*People v. Thomas* (1987) 43 Cal.3d 818, 830–832 [even where the accusatory pleading is defective, the defendant is still required to demonstrate he or she was misled in a manner causing prejudice]; see *People v. Anderson*, *supra*, 9 Cal.5th at p. 964 [concluding notice error was not harmless].) Sufficient notice allows a defendant to make informed decisions about his case such as whether to plead guilty, how to allocate investigatory resources, what trial strategy to employ. (*Ibid.*)

Nothing in the parties' briefs or the record indicate defendant was offered and refused a plea bargain that confusion over his maximum sentence exposure might have influenced. Further, there is nothing to suggest defendant might have allocated investigatory resources differently or presented any alternative type of defense had he

41.

known the harsher indeterminate term under section 667.61(j)(2) would apply. The age of the victim was necessarily at issue by virtue of the underlying offenses. Defendant's defense theory was that he never committed the lewd or lascivious acts at all. Like *Vaquera*, we perceive no prejudice stemming from any deficient notice of which indeterminate term would necessarily apply under the One Strike law. (*Vaquera*, *supra*, 39 Cal.App.5th at p. 242.)[17]

## IV. Remand for Consideration of Ability to Pay Fines and Assessments Imposed

### A. Background

At the sentencing hearing, the trial court imposed a total of $2,790 in penalty assessments and a total of $900 in sex offender fines under section 290.3; a $300 restitution fine under section 1202.4, subdivision (b); a total court facility assessment of $120 under section 1465.8; and a total operations assessment of $90 under Government Code section 70373.[18] At the conclusion of the sentencing hearing, defense counsel objected to the fines and fees imposed based on defendant's inability to pay. The court instructed counsel that if defendant "would like to file a written motion on that or you, on his behalf, and have it heard, I'm happy to entertain that." After the court made this statement, the sentencing hearing was concluded. The next day, on February 14, 2019, defendant filed a notice of appeal. No written motion regarding the fines, fees, and assessments was filed with the trial court.

---

[17] We agree with the People on the merits of this issue and, therefore, decline to address their claim of forfeiture. Moreover, because we conclude notice related to the One Strike law was constitutionally sufficient and not prejudicial in any event, defendant's alternative ineffective assistance of counsel claim based on a failure to object on this ground, fails. (See *People v. Ledesma* (2006) 39 Cal.4th 641, 748 [having reached the merits of underlying arguments and concluding there was no error, related claims of ineffective assistance of counsel failed and were not discussed further].)

[18] The court also imposed a parole revocation fine of $300 under section 1202.45, which was suspended; and ordered victim restitution be paid under section 1202.4, subdivision (f), in an amount to be determined by the probation department.

The probation report indicates defendant has a sixth grade education, and was self-employed at the time of his arrest fixing appliances for about $400 per month.

Defendant argues the case should be remanded for resentencing because, despite his trial counsel's objection, the court failed to consider his inability to pay when it imposed the fines and assessments, which is relevant under *Dueñas*, *supra*, 30 Cal.App.5th 1157, and under section 290.3. He also maintains that if his counsel's failure to file a written motion after sentencing forfeited his inability-to-pay arguments on appeal, his counsel rendered ineffective assistance.

The People note defendant was sentenced after *Dueñas* was issued, and although he generally objected on the basis of his inability to pay, he did not pursue the trial court's invitation to file a postjudgment written motion on the matter. The People argue defendant thus abandoned his objection and forfeited his inability-to-pay arguments on appeal. Even if considered on the merits, however, the People dispute his entitlement to any relief.

### B.      Analysis

The inability to pay was relevant to the fines and assessments imposed. Specifically, section 290.3, subdivision (a), provides, "Every person who is convicted of any offense specified in subdivision (c) of Section 290 shall, in addition to any imprisonment or fine, or both, imposed for commission of the underlying offense, be punished by a fine of three hundred dollars ($300) upon the first conviction or a fine of five hundred dollars ($500) upon the second and each subsequent conviction, *unless the court determines that the defendant does not have the ability to pay the fine*." (Italics added.)

If the sex offender fine is imposed under section 290.3, mandatory penalty assessments and surcharges based on the amount of the sex offender fine must also be imposed. (See *People v. Walz* (2008) 160 Cal.App.4th 1364, 1371–1372.) Thus, the

inability to pay a sex offender fine would also implicate the mandatory penalty assessments and surcharges that are based on that sex offender fine.

Further, in *Dueñas*, which was decided a few weeks before the sentencing in this case, that court held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.)  It also held that "although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid.*)

Defendant's counsel interposed an objection to the fines and assessments at the sentencing hearing based on an inability to pay, but instead of allowing defendant to present any argument on that issue, make any showing as to his inability to pay, or rule on the objection, the court instructed counsel that he could file a written motion after the sentence had been imposed that the court would then entertain.  Defendant never filed such a motion, and the parties dispute whether that resulted in forfeiture of the inability-to-pay argument on appeal.

In general, "a party may forfeit [the] right to present a claim of error to the appellate court if he did not do enough to 'prevent[]' or 'correct[]' the claimed error in the trial court [citation.…" (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) "[C]ounsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing." (*People v. Scott* (1994) 9 Cal.4th 331, 353.)

The trial court has no sua sponte duty to inquire into defendant's ability to pay various fines and fees at issue here—the burden of objecting to and of establishing the inability to pay fines and fees is carried by the defendant.  (*People v. McMahan* (1992) 3

44.

Cal.App.4th 740, 749–750; see *People v. Montes* (2021) 59 Cal.App.5th 1107, 1118–1119 [*Dueñas* claims can be forfeited by failing to object, but not when the objection is futile or unsupported by existing law].)  But where the defendant makes an objection, and the court effectively refuses to entertain it before concluding the sentencing hearing and issuing judgment, the opportunity to object has not been meaningful.  (See *People v. Scott*, *supra*, 9 Cal.4th at p. 356 [noting that failure to object to sentencing issues may result in forfeiture when there has been a meaningful opportunity to object].)

While the trial court retained jurisdiction to entertain a postjudgment motion to correct an error in the imposition or calculation of fines, penalty, assessments, and fees (§ 1237.2), the objection at the sentencing hearing preserved the issue for appeal.[19]  Because the issue was not developed below and the court effectively did not rule on defendant's inability-to-pay objection at the sentencing hearing, we are left in much the same position as cases where no ability-to-pay objection is made, no record is developed, but the inability-to-pay challenge was not forfeited.  (See *People v. Montes*, *supra*, 59 Cal.App.5th at pp. 1121–1122 [undeveloped record warranted remand where *Dueñas* claim was not forfeited by lack of objection at sentencing].)

Without an adequate record to review, we conclude it is appropriate to remand so that defendant may present his argument regarding his inability to pay the fines and assessments imposed.  Defendant will bear the burden of demonstrating a harm of constitutional magnitude and making a record regarding his alleged inability to pay the

---

**19**     Section 1237.2 provides, "An appeal may not be taken by the defendant from a judgment of conviction on the ground of an error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction in the trial court, which may be made informally in writing.  The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs upon the defendant's request for correction.  This section only applies in cases where the erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs are the sole issue on appeal."

fines, penalty assessments, and court assessments. Without a developed record before us, we express no view as to whether defendant may be able to state a viable claim under *Dueñas* that ultimately withstands constitutional scrutiny on review.

## V.     Clerical Errors in the Abstract of Judgment

The abstract of judgment prepared after sentencing reflects the $300 restitution fine under section 1202.4, subdivision (b), and the corresponding $300 fine under section 1202.45, which was suspended; victim restitution under section 1202.4, subdivision (f), in an amount to be determined by probation; a total court operations assessment of $40 under section 1465.8; and a $30 court facilities assessment under Government Code section 70373. No other fines, fees, or penalty assessments are recorded in the abstract of judgment.

The abstract of judgment should have included all of the assessments imposed by the court, which totaled $120 under section 1465.8 and $90 under Government Code section 70373. It also should have reflected the penalty assessments and the sex offender fines imposed by the court under Penal Code section 290.3, which totaled $2,790 and $900, respectively.[20] (*People v. High* (2004) 119 Cal.App.4th 1192, 1200.) While this issue may be moot in light of the remand ordered to consider the fines and assessments imposed, the abstract of judgment must be corrected as noted even if there is no change to the judgment on remand.

## DISPOSITION

The matter is remanded to the trial court to allow defendant the opportunity to present his argument regarding his inability to pay the fines and assessments imposed.

---

[20]     Each of the three $930 penalty assessments imposed by the court for counts 1, 2, and 3 were broken down in the probation report as follows: (1) $300 under Penal Code section 1464, subdivision (a); (2) $210 under Government Code section 76000, subdivision (a); (3) $30 under Government Code section 76104.6; (4) $120 under Government Code section 76104.7; (5) $150 under Government Code section 70372, subdivision (a); (6) $60 under Government Code section 76000.5; and (7) $60 under Penal Code section 1465.7.

The judgment is otherwise affirmed. If there is no change to the judgment on remand regarding the fines and assessments, the trial court shall correct the abstract of judgment to reflect the total court operations assessments under Penal Code section 1465.8 of $120, the total court facilities assessment under Government Code section 70373 of $90, the total sex offender fines under Penal Code section 290.3 of $900, and a total penalty assessment of $2,790. The amended abstract shall be forwarded to the appropriate authorities.

MEEHAN, Acting P.J.

WE CONCUR:

SNAUFFER, J.

DeSANTOS, J.